**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **SSP AMERICA, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No.** |
| | ) | |
| | ) | |
| **MEMPHIS-SHELBY COUNTY AIRPORT AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

1. Plaintiff SSP America, Inc., formerly Creative Host Services, Inc., is a corporation incorporated under the laws of California. Defendant Memphis-Shelby County Airport Authority is a body politic and corporation incorporated under the laws of Tennessee. The amount in controversy, exclusive of interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

2. On or about the first day of April, 2005, Plaintiff and Defendant entered into a Lease and Concession Agreement for the Development of The Blue Note Café & Lounge Concession at Memphis International Airport (hereafter, the "Agreement") in Memphis, Tennessee, under which Plaintiff leased from Defendant certain restaurant space at the Memphis International Airport (the "Airport") and agreed to develop and operate the premises as a food and beverage concession known as The Blue Note Café (hereafter, the "Concession"). A copy of the Agreement, as amended, is attached as Exhibit A hereto. Following execution of the Agreement, as contemplated therein, Plaintiff opened and operated The Blue Note Café at the Airport.

3. On or about December 19, 2011, Plaintiff and one of its affiliates entered into a Purchase and Sale Agreement with Creative Food Group, LLC (the "Buyer") under which Plaintiff agreed to sell and the Buyer agreed to purchase the Concession for the Blue Note Cafe, along with several other airport concessions operated by Plaintiff at other airports. A copy of the Purchase and Sale Agreement, as amended, is attached as Exhibit B hereto. The sale price for the Concession was $850,000. Section 14.1 of the Agreement provided

> Tenant shall not assign this Agreement, or any part thereof, in any manner whatsoever nor shall it assign any of the privileges herein granted without the prior written consent of the Authority [Defendant].

Therefore, Plaintiff was required to obtain Defendant's consent in order to complete the sale to the Buyer.

4. Under Tennessee law, which is applicable to the Agreement under paragraph 20.20 thereof, Defendant was required to act with good faith and in a commercially reasonable manner in granting or withholding consent to the assignment. Although Plaintiff repeatedly requested such consent from Defendant, Defendant breached the Agreement by refusing to consent to such assignment without a good faith and commercially reasonable basis for doing so. Defendant's final refusal was communicated to Plaintiff by a letter dated July 9, 2012 from Richard V. White, Defendant's Vice President of Properties and Business Management, to Les Cappetta, Plaintiff's President and Chief Executive Officer. Mr. White's letter stated, in relevant part, as follows.

> This correspondence is to reaffirm Memphis-Shelby County Airport Authority's ("MSCAA") position with regard to SSP's request to assignment [sic] its Lease and Concession Agreement to Creative Food Group. We have no reasonable knowledge or expectation that another entity would improve operations at this stand alone concession.
>
> The Lease and Concession Agreement was constructed to specifically provide for a smoking lounge in the Airport. A transfer of ownership would require the new owner

> to obtain a liquor license; and with current state regulations on smoking, the application for a new liquor license could very well be denied.
>
> Currently, all concessionaires are facing the impact of Delta's announcement that it intends to cut an additional 25 flights per day. It is anticipated that this decrease in flights will significantly impact the amount of foot traffic in front of Blue Note Café which will affect the store's revenue.

A copy of Mr. White's letter of July 9, 2012 is attached as Exhibit C hereto.

5. Defendant's refusal to consent to the assignment because Defendant "had no reasonable knowledge or expectation that another entity would improve operations" at the Blue Note Café, as stated in Mr. White's letter of July 9, 2012, was neither commercially reasonable nor in good faith. Such a stated concern was entirely unrelated to the merits of the Buyer as a proposed assignee. Moreover, Defendant's insistence that any prospective assignee ***improve*** on Plaintiff's operations at the Blue Note Café was, on its face, in bad faith and unreasonable, because Defendant was essentially insisting that any assignment place Defendant in a better position than Defendant would enjoy in the absence of an assignment.

6. Defendant's refusal to consent to assignment because Tennessee regulations on smoking might prevent the Buyer from obtaining a new liquor license was neither commercially reasonable nor in good faith. At all times relevant hereto, Tennessee's regulations pertaining to the granting of liquor licenses were entirely unrelated to and administered independently of Tennessee regulations pertaining to smoking. Moreover, even assuming that smoking on the premises of the Blue Note Café might have made it more difficult to acquire a new liquor license, paragraph 4.6 of the Agreement expressly provided as follows:

> Smoking. Concessionaire shall not permit smoking in the Leased Premises unless specifically authorized and approved by the authority. The Authority has authorized the Food and Beverage Facility [the Blue Note Café] to be operated as a smoking facility. Approval of the Authority shall be conditioned, in part, upon the installation of mechanical and/or physical systems by the Concessionaire, at its sole cost, that ensure that smoke does not escape from the subject part of the Leased Premises to other interior

> spaces and that all airflow is separate ventilated outside of the Terminal Building. Concessionaire shall not do anything contrary to the Airport policy, ordinances, rules and regulations regarding smoking.

Thus, while the Agreement conditionally ***permitted*** smoking on the premises of the Blue Note Café, the Agreement did not ***require*** smoking, and the Buyer would have been free to eliminate smoking at the Blue Note Café if necessary to obtain a new liquor license, which it was not.

7. It was unreasonable for Defendant to refuse consent to assignment on the grounds that the anticipated decrease in Delta's flights "will significantly impact the amount of foot traffic in front of the Blue Note Café which will affect the store's revenues," because such decrease in revenues would occur regardless of whether Defendant consented to the assignment. Indeed, Defendant's citation of such anticipated decrease in store revenues demonstrates that Defendant was well aware that its refusal to consent to the assignment would subject Plaintiff to the decrease in revenues at the Blue Note Café which Plaintiff actually experienced following Defendant's refusal to consent, and demonstrates that Defendant's refusal to consent to the assignment was in bad faith.

8. Defendant's unreasonable and bad faith refusal to consent to the assignment of the Agreement constituted a breach of the Agreement under Tennessee law. Defendant's breach prevented Plaintiff from realizing the benefit of its bargain by selling the Blue Note Café to the Buyer. Plaintiff is no longer able to profitably operate the Blue Note Café because of the decline of traffic which Defendant cited as a reason for its refusal to consent to such assignment, and has no reasonable prospect of being able to sell the Blue Note Café to any other buyer. The benefit of the bargain of which Defendant wrongfully deprived Plaintiff is thus equal to the agreed purchase price of $850,000.

9. Prior to receipt of Mr. White's letter of July 9, 2012, the Blue Note Café operated as a profitable restaurant. Shortly thereafter, as predicted in Mr. White's letter, Delta airlines began reducing flights in and out of Memphis International Airport; eventually, Delta closed its hub at the Airport. Passenger traffic at Memphis International Airport declined from 7.8 million passengers for its fiscal year ending June 30, 2012 to 5.5 million passengers in fiscal 2013, a decline of almost 30%, which the Airport will not recover during the term of the Agreement, causing Plaintiff to lose all or substantially all of the economic benefit of the Agreement, and entitling Plaintiff to terminate the Agreement pursuant to Section 13.1 thereof. Since the date of Plaintiff's refusal of consent to the assignment, Plaintiff has suffered a net operating loss for each calendar month through July of 2013. As of the date of the filing of this Complaint, such operating losses total $312,125 necessitating closure of the Blue Note Café.

10. Defendant's breach of contract has caused Plaintiff to suffer damages in an amount to be shown at trial, which are expected to exceed $1,250,000, representing the loss of the benefit of its bargain to sell the Blue Note concession, together with operational losses at the Blue Note Café following Defendant's wrongful refusal of consent to the assignment.

## FIRST COUNT--BREACH OF CONTRACT

11. The allegations of paragraphs 1 through 10 are herein incorporated by reference.

12. Defendant's breach of contract entitles Plaintiff to recover damages in an amount to be shown at trial, currently exceeding $1,162,000, together with pre-judgment interest.

## SECOND COUNT--TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

13. The allegations of paragraphs 1 through 12 are herein incorporated by reference.

14. Defendant was aware that Plaintiff had a business relationship with the Buyer and an expectancy of selling the Blue Note Café to the Buyer for $850,000.

15. Defendant intentionally and maliciously interfered with Plaintiff's business with Buyer by wrongfully refusing consent to Plaintiff's assignment of the Agreement to the Buyer, without any commercially reasonable or good faith basis for such refusal.

16. Defendant's conduct constituted intentional tortious interference with Plaintiff's business relations with the Buyer entitling Plaintiff to recover compensatory damages from Plaintiff in the amount to be shown at trial, currently exceeding $1,162,000, together with prejudgment interest, and punitive damages in the amount of $2,000,000.

**THIRD COUNT--DECLARATORY RELIEF**

17. The allegations of paragraphs 1 through 16 are herein incorporated by reference.

18. Plaintiff is entitled to a declaration that pursuant to Section 13.1 a) and c) of the Agreement, the Agreement is cancelled, and that Plaintiff has no obligation to pay rents, fees or other charges under the Agreement because (i) of Plaintiff's permanent removal of such passenger airline service from the Airport as to result in Plaintiff's loss of all or substantially all of the economic benefit thereof, and (ii) Plaintiff's breaches of the Agreement alleged above.

**WHEREFORE AND FOR ALL OF WHICH, PLAINTIFF PRAYS:**

1. For an award of compensatory damages in an amount to be shown at trial, together with prejudgment interest thereon.

2. For an award of punitive damages in the amount of at least $2,000,000.

3. For prejudgment interest.

4. For a declaration that Plaintiff has no further obligation to pay rents, fees or other charges under the Agreement.

5. For an award of costs.

6. For such other relief to which Plaintiff may show itself entitled.

Respectfully submitted,

/s/ *Heather J. Hubbard*

Ames Davis, Esq. (BPR No. 003826)
Heather J. Hubbard, Esq. (BPR No. 23699)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
E-Mail: ames.davis@wallerlaw.com
heather.hubbard@wallerlaw.com